STEVEN G. KALAR
Federal Public Defender
Northern District of California
JOYCE LEAVITT
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:   (510) 637-3500
Facsimile:    (510) 637-3507
Email:         joyce_leavitt @fd.org


Attorneys for GONZALES

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GABRIEL GONZALES,<br><br>Defendant. | **Case No.:** CR 4-20-70327 (RS)<br><br>**DEFENDANT'S OPPOSITION TO UNITED STATES' MOTION TO REVOKE PRE-TRIAL RELEASE ORDER** |

## INTRODUCTION

After a lengthy detention hearing, the Honorable Donna M. Ryu determined that Mr. Gonzales could be released on a $75,000 bond under extremely stringent conditions. These conditions include the requirement that Mr. Gonzales reside on lockdown, subject to location monitoring, at the home of his mother, Teresa Gonzales Montano, who has agreed to act as both custodian and surety.[1] Along with a number of standard conditions, Judge Ryu also ordered Mr. Gonzales to have "no contact whatsoever" with his wife "unless legally required," and further ordered that he participate in drug treatment and counseling. At his request, Judge Ryu also added a condition that he participate in mental health counseling. Judge Ryu's decision to release Mr. Gonzales was supported by Pretrial Services, who recommended Mr. Gonzales' release and vetted two viable sureties, including Teresa Gonzales Montano who ultimately signed the bond.

The government now asks this Court to revoke Judge Ryu's thoughtful pre-trial release order. *See* Dkt. 6, United States' *Ex Parte* Application for a Stay of, And Motion to Revoke the Magistrate Court's Pre-Trial Release Order ("Gov. Mot."). The arguments it now raises mirror those contained in its Memorandum in Support of the United States' Motion for Detention ("Gov. Memo") which was provided to Judge Ryu prior to the detention hearing and also argued at the hearing.  Judge Ryu read the Gov. Memo prior to the hearing, considered the same arguments which were made at the hearing and still determined that Mr. Gonzales should be released. The government has proffered no new evidence that should change the conclusions of both Pretrial Serices and Judge Ryu that Mr. Gonzales should be released from custody under the stringent conditions set. Thus, the government's motion to revoke the pre-trial release order should be denied.

## ARGUMENT

The Bail Reform Act mandates release of a person pending trial unless a court finds the person a flight risk or a danger to the community.  18 U.S.C. § 3142(b).  The court must impose "the least restrictive further condition, or combination of conditions" it "determines will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18

---

[1] Ms. Teresa Gonzales Montano owns her residence and calculates the equity to be worth $400,000. Ms. Gonzales Montano has promised not to take any steps which would diminish that equity.

U.S.C. § 3142(c)(1)(B).  The government bears the burden of proving by clear and convincing evidence that a defendant poses a flight risk or a danger to the community that cannot be mitigated through the imposition of conditions of release.  Close cases should result in a defendant's release. *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985).

Even if a person is deemed a danger or a flight risk, they "must still be released if there is a 'condition or combination of conditions that will reasonably assure" the appearance of the person and the safety of the community.  *United States v. Hir*, 517 F.3d 1081, 1091-92 (9th Cir. 2008) (quoting 18 U.S.C. § 3142(e)).  The Bail Reform Act "contemplates only that a court be able to 'reasonably assure,' rather than guarantee" the appearance of the person and safety of the community.  *Hir*, 517 F.3d at 1092 n. 9.

While the government is correct that this case involves a rebuttable presumption that the defendant should be detained, Gov. Mot. at p. 4, Mr. Gonzales need only present "some credible evidence" showing that he is not a flight risk or danger to the community in order to rebut the presumption, and his is only a burden or production. *See, e.g. United States v. Freitas*, 602 F. Supp. 1283 (N.D. Cal. 1985); *United States v. Moore*, 607 F. Supp. 489 (N.D. Cal. 1985). Furthermore, courts have relied upon various kinds of evidence in finding that the presumption has been rebutted, many of which are present in this case. *See, e.g. United States v. Hare*, 873 F.2d 796 (5th Cir. 1989)(pretrial services report may rebut presumption); *United States v. O'Brien,* 895 F.2d 810 (1st Cir. 1990)(use of electronic bracelet "arguably" rebuts presumption); *United States v. Alderson*, 2019 WL 926604 (E.D. Mich. 2019)(custodian may rebut the presumption).

The Bail Reform Act directs courts to consider several factors in determining whether a person should be released.  *See* 18 U.S.C. § 3142(g). Those factors include but are not limited to : (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the history and characteristics of the person, including, (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol use, criminal history, and record concerning appearances at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on release pending trial. 18 U.S.C. § 3142(g). Pretrial Services

1   and Judge Ryu weighed the relevant factors and determined that Mr. Gonzales could be released.  Mr.

2   Gonzales asks this Court to affirm Judge Ryu's determination that Mr. Gonzales should be released.

3   **A.    Nature and Circumstances of the Offense.**

4          Mr. Gonzales recognizes that the nature and circumstances of the offense are serious. Now that

5   he has been drug free for two months, and has had time to reflect on what happened, his mind is clear

6   and he is ashamed and truly sorry. However, his actions were aberrant and the result of a confluence

7   of circumstances which will not happen again. The nature and circumstances of the offense were

8   carefully considered by Judge Ryu when she fashioned the very stringent conditions of release.

9          At the detention hearing, Mr. Gonzales provided context for his actions on March 9, 2020,

10  through a detailed proffer. Mr. Gonzales proffered that he had struggled with methamphetamine use[2]

11  in the past, but had been clean and sober for 12 years from 2005 until 2017 until he relapsed in 2017.

12  During that 12 year window (and for three years after that), Mr. Gonzales had no criminal

13  convictions or charges and no arrests for 11 years.[3]  This long period of sobriety and law-abiding

14  behavior, coupled with the fact that Mr. Gonzales's only prior conviction is a misdemeanor from

15  2005, demonstrates that Mr. Gonzales is an individual who can remain sober and law-abiding, and is

16  therefore likely to comply with the Court's directives.[4] It also supports Mr. Gonzales' argument that

17  his actions on March 9, 2020, were aberrant. After hearing the evidence, Judge Ryu agreed and set

18  the conditions of release described above.

19          Mr. Gonzales further proffered that he suffers from diabetes and its effects started to take a toll

20  on his body and he became really sick in 2017. The details of his diabetes are described more fully

21  _____

22  [2] During the pretrial services interview, counsel advised Mr. Gonzales to decline to discuss his drug
    use history because the charged offense is a drug offense and counsel did not have the opportunity to
23  talk with Mr. Gonzales regarding his addiction before the interview.

24  [3] The pretrial services report indicates that Mr. Gonzales was detained in 2009 on allegations of rape
    and false imprisonment. *See also* Gov. Mot. at p. 7. Mr. Gonzales explained the circumstances of that
    detention. He and others had been drinking at an apartment when one individual brought a prostitute
25  and spent time alone with her. The woman left but forgot her purse and filed a report alleging rape
    and false imprisonment against everyone at the apartment. The police investigated, and found that she
26  was not credible. Mr. Gonzales and the others were quickly released with no charges.

27  [4] Although the government points to statements by Mr. Gonzales' children about a prior incident
    threatening violence against their mother, Gov. Mot. at p. 7, any such incident would have occurred
28  around the time of his arrest in this case when Mr. Gonzales and not during the 12 years that he was
    clean and sober. Mr. Gonzales is determined to remain sober. He will be on lockdown and will not
    pose a danger to his wife.

below under the "physical health" section. But in short, Mr. Gonzales had been back and forth to the emergency room via ambulance multiple times in the months preceding his arrest because of complications from his diabetes, including uncontrolled vomiting because of neuropathy and nerve damage to the lining of his intestines and stomach (described below)..

On March 9, 2020, Mr. Gonzales was under the influence of methamphetamine and suffering the effects of his uncontrolled diabetes on that particular day, including blurred vision, fatigue and extreme nausea. Meanwhile, Mr. Gonzales' wife of 24 years was leaving for a trip to Arizona with friends. Although Mr. Gonzales had been separated from his wife for more than a year, she had continued to care for Mr. Gonzales who spent time going back and forth between his mother's house and his wife's house. Mr. Gonzales was afraid that his wife was leaving him and terrified that he would be sick and alone. He was overwhelmed with the fear that he couldn't handle his illness on his own and reacted without thinking. He was arrested on March 9, 2020. That was the last day that he used methamphetamine.

Now that he has had two months of sobriety and plenty of time to reflect on that day, Mr. Gonzales is mortified by, and deeply sorry for, his actions. His mind is now clear and his thinking is different. Mr. Gonzales is resigned to his circumstances and determined to move forward to address his health and criminal case. Although the government argues that Mr. Gonzales is still a danger to his family because he may seek to blame and punish them for the fact that he now faces criminal charges, Gov. Mot. at 6, this is simply not true. Mr. Gonzales loves his wife and children and does not blame them in any way. He blames only himself and he is sorry.[5]

Finally, the government's argument that the nature and circumstances of the offense will cause Mr. Gonzales to flee rather than face the potential sentence in this case is unfounded. *See* Gov. Mot. at p.6. Mr. Gonzales was born and raised in the bay area. He has no intention of fleeing and no place to go. Because the conduct in this case was aberrant, the very stringent conditions set by Judge Ryu reasonably assure that Mr. Gonzales does not pose a danger to his family or the community.

---

[5] Although the government also argues that the pit bulls charging out the front door was conduct which put the officers in danger, Gov. Mot. at p.6, Mr. Gonzales proffered during the hearing that he believed the dogs were in the yard and was unaware that they had come into the house through a window until they ran out the front door.

**B.**    **The Weight of the Evidence.**

The government's brief focuses heavily on the facts of the offense conduct and the evidence against Mr. Gonzales. But "the weight of the evidence is the least important of the various factors." *Hir*, 517 F.3d at 1090 (internal quotations and citations omitted). The Bail Reform Act "neither requires nor permits a pretrial determination of guilt." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). Significantly, the weight of the evidence was known to Judge Ryu, who was presented with the same evidence included in the government's briefs that it now presents to this Court. Knowing the same facts and background, Judge Ryu still determined there stringent release conditions could be set which would sufficiently mitigate any possible danger to the community. Pretrial services also recommended release in this case. Nothing the government has presented before this Court changes that conclusion.

**C.**    **Mr. Gonzales' History and Characteristics Support Release.**

The Bail Reform Act lists several specific characteristics about Mr. Gonzales this Court must consider in deciding whether he should be released. *See* 18 U.S.C. § 3142(g)(3)(A) and (B).

Mr. Gonzales Physical Condition: During Mr. Gonzales' pretrial services interview,[6] he told the pretrial services officer that he suffers from Type 2 Diabetes which was diagnosed eleven years ago and he takes insulin daily. Despite this, Mr. Gonzales has suffered a number of complications as a result of his diabetes including nerve damage to his fingers, neuropathy to his feet and hands, bone infections to his toes, ulcers and gastroparesis. Gastroparesis is described on the internet as a medical disorder consisting of weak muscular contractions of the stomach, because of nerve damage to the stomach lining and intestines, which causes food and liquid to remain in the stomach for prolonged time. The symptoms include nausea, uncontrolled vomiting and abdominal pain caused by neuropathy of the nerve which enervates the stomach. Uncontrolled diabetes is a major cause of this internal nerve damage. Diabetic gastroparesis is considered to be slowly progressive and even fatal. Other complications of gastroparesis include fluctuations in blood glucose due to unpredictable

---

[6] If the Court so requests, counsel is willing to submit a declaration regarding the information provided to pretrial services, and confirmed by Mr. Gonzales' mother, regarding Mr. Gonzales' diabetes complications. Counsel is waiting for medical records from Santa Rita jail but Mr. Gonzales' last two months in custody were at Martinez County Jail not Santa Rita jail until a week ago.

digestion and constant and severe fatigue. Mr. Gonzales has gone to the emergency room by ambulance a number of times over the past few months because of complications due to his gastroparesis and other side effects of his diabetes, including some talk about amputating one of his toes because of damage due to the diabetes. In addition to diabetes, Mr. Gonzales suffers other serious health issues including hypertension, high cholesterol and anemia. Mr. Gonzales' overall physical health is poor and it goes without saying that he is at high risk should he contract COVID-19 while in custody.

Mr. Gonzales' Mental Condition: Mr. Gonzales suffers from undiagnosed anxiety and is receiving some medication for his anxiety.

Family and Community Ties: Mr. Gonzales is a lifelong resident of the Bay Area and his family ties are all here. Mr. Gonzales' mother, Teresa Gonzales Montano owns a condominium in Hercules, CA and she is willing to be Mr. Gonzales' surety and custodian. Her residence has equity which covers the value of the bond which she is willingly placing at risk because she knows that her son will comply with the conditions of release. She also has a good salary from working for the US Postal Service for over 30 years. Mr. Gonzales' aunt, Socorro Duran, is also willing to sign a bond as a surety. Mr. Gonzales' younger brother also lives in the area and he has daily contact with his brother. His father is deceased. Mr. Gonzales' minor children also live in the area. All of Mr. Gonzales' ties are to the Bay area.

Drug and alcohol abuse: As described above, Mr. Gonzales has struggled with his addiction to methamphetamine. Mr. Gonzales was clean and sober for 12 years but relapsed in 2017 and was using at the time that he was arrested on March 9, 2020. Mr. Gonzales had been in county or federal custody since that date and has been sober for more than two months. The fact that he was able to maintain his sobriety for 12 years after he was last released from custody in 2005 should give this Court confidence that Mr. Gonzales is able to abstain from drug use. In addition, as one of his conditions of release, Judge Ryu ordered drug testing and treatment. This will further ensure that Mr. Gonzales is closely monitored and addressing his drug addiction.

Criminal history: Mr. Gonzales has just one prior misdemeanor conviction from 2005. He has no prior felony convictions. He also was detained in 2009. Although the government argues that Mr.

Gonzales' criminal history shows that his offense conduct was not an aberration, Gov. Mot. at p.6., the same argument was made to Judge Ryu who still found that Mr. Gonzales should be released. Furthermore, as he proffered during the detention hearing, in 2005 at the time of his first offense, Mr. Gonzales was also using methamphetamine. He got into an argument with his wife and left the house. The police came and searched the house with the wife's permission, and found an illegal shotgun which had been given to Mr. Gonzales. Mr. Gonzales pled guilty to misdemeanor possession of the illegal weapon and was released from custody to do a work program. At the time of his release in 2005, Mr. Gonzales was determined to stop using methamphetamine and he remained clean and sober for approximately 12 years. The government also points to a detention in 2009 for serious charges but, as the government acknowledges, no charges were ever filed. Gov. Mot. at p. 7. The circumstances of that detention are described above and no charges were ever filed because Mr. Gonzales never committed any crime. Moreover, Mr. Gonzales is once again clean and sober and he is committed to maintaining his sobriety. His conditions of release include lockdown with electronic monitoring, as well as drug treatment for his addiction and mental health counseling as well. Mr. Gonzales has demonstrated through his years of sobriety coinciding with his lack of criminal history during that period, that he can and will comply with the conditions imposed by Judge Ryu. His sparse criminal history does not indicate otherwise.

    <u>Probation, Parole status and record regarding court appearances</u>: Mr. Gonzales was not on probation or parole at the time of his arrest in this case and has not been under any court supervision for more than 10 years prior to the current offense. His only prior case was a misdemeanor for which he was placed on probation for three years. There is no evidence in the record that Mr. Gonzales ever violated the conditions of his supervision nor is there any indication that he ever failed to appear or otherwise failed to comply with his conditions of release. Indeed, the record supports Mr. Gonzales' assertion that he will follow all conditions of release and also appear for court as ordered.

**D.   <u>COVID-19 Is another Reason to Release Mr. Gonzales.</u>**

    Mr. Gonzales' diabetes, including his gastroparesis, as well as his hypertension, place him at substantially higher risk of becoming severely ill and dying from COVID-19 according to the Center

for Disease Control (CDC).[7] As this Court recognized in *United States v. Burrill,* "these conditions are, of course, not ones from which an individual is expected to 'recover'; any incarcerated person with one of these underlying conditions is unlikely to be able to 'provide self-care within the environment of a correctional facility' to avoid contracting COVID-19." *United States v. Burrill*, CR 17-00491-RS-1, 2020 WL 1846788, at *3 (N.D. Cal. Apr.10, 2020). Indeed, patients with diabetes make up 32% of ICU-hospitalized COVID-19 patients and the percentage of COVID-19 patients with "at least one underlying health condition. . . was higher among those requiring [ICU] admission" - 78% - "than that among those who were not hospitalized" – 27 %. *See* CDC Covid-19 Response Team, Preliminary Estimates of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease 2019-United States, February 12- March 28, 2020 at 382-84.[8] In addition, this Court is undoubtedly aware that the CDC has warned that COVID-19 poses a heightened risk to those incarcerated in jails and prisons. *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correction and Detention Facilities*, Ctrs. For Disease Control and Peventions 2 (March 23, 2020).

Mr. Gonzales is not asking this Court to grant him temporary release in this case based upon COVID-19. Rather, he agrees with the Judge Ryu that there are conditions of release under the Bail Reform Act which can be fashioned to reasonably assure that Mr. Gonzales is neither a flight risk nor a danger. That is all that is required. The fact that Mr. Gonzales suffers from serious health issues which place him at greater risk of serious illness or death should he contract COVID-19, further incentivizes Mr. Gonzales to do precisely what he is supposed to do to ensure that he comply with all conditions of release so that he can remain out of custody during the pendency of his case.

Both Pretrial Services and Judge Ryu concluded that conditions of release could be fashioned to mitigate any danger in this case. This Court should deny the government's motion to revoke Judge Ryu's release order.

// 

---

[7] Centers for Disease Control, People who are at higher risk for severe illness, available at: https://bit.ly/3bFtw7x
[8] *See* http://dx.doi.org/10.15585/mmwr.mm6913e2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>CONCLUSION</u>**

Mr. Gonzales respectfully asks this Court to affirm Judge Ryu's order allowing Mr. Gonzales to remain out of custody.


Dated:     May 18, 2020                              Respectfully submitted,

                                                                STEVEN G. KALAR
                                                                Federal Public Defender

                                                                              /S
                                                                JOYCE LEAVITT
                                                                Assistant Federal Public Defender